My name is Jay Breakstone, and with me is Jessica Richman from my office. We represent the plaintiff appellant, U1IT4less. There are three questions before the court, as I see it this morning, and I will begin with the RICO distinctiveness or distinctness question, because I think that's the elephant in the room right now. The only way that the court gets to the distinctness question is because of the district court – the most recent district court opinion on the motion for summary judgment. The prior district court opinion had no problem understanding that FedEx – and when we say FedEx, we mean FedEx Corporation – has set up The holding company. Excuse me, Your Honor? The holding company. Yes. I don't even know if I'd call it that, but I think that's fine for our purposes. But it has set up a method of operation of operating its subsidiaries, and it's set it up very intentionally. It has set it up to be distinct, each one of these so-called subsidiaries. Now, understand these are separate corporations, have separate boards of directors some members might interlock, and they have very separate purposes. And they've been set up to do very separate things. And I think for RICO, that's what we're talking about. We're talking about, as one court said, are these corporations merely stacks of stationery, or do they have separate purposes? Was it your theory in the complaint or in this litigation that FedEx Corporation and I guess the marketing subsidiary set up the FedEx Ground subsidiary to engage in the overcharging that you allege? I think it's fair to say from the pleadings and from the discovery thus far in the documents that FedEx Ground was actually an ongoing concern that was purchased by FedEx. In fact, for those who may have practiced law in this area many years ago, it was called roadway package delivery. Did small packages, envelopes, et cetera. I know we used to use it to go up to Albany. It was purchased by FedEx solely to do small package delivery. Now, I imagine it did other things than defraud plaintiffs like mine, but yes, that was the to further the scheme and to make it happen. And when I say that FedEx set up these subsidiaries this way, it's not me saying that. In the record, there are a number of the 10Ks of FedEx Corp. And FedEx Corp says as follows, their words, we operate, quote, operate independently, compete collectively, and manage collaboratively. Well, the first one is the problem for defendants here. Because if we operate independently their words, then that is all that's necessary for the purposes of RICO distinctness. That's one part of the test is whether they have a single corporate consciousness, right? Yes. And you're saying they don't. Not when it comes to this situation at all. They may have a single corporate consciousness on other things that they do together or not. And I think that phrase is really problematic. I've never thought of corporate existence as a sort of Zen thing in terms of consciousness. They gave me the words. I didn't make them up. I know. Neither would I have made them up. For the Supreme Court's purposes, that's not what's required. And wasn't required for this Court in Securitron. This Court has made it very clear, and the Supreme Court in Cedric Kushner has made it very clear, that we need distinctness. In other words, they can't be an amalgam. They have to have separate identities. Now, we start off by saying they're separate entities. Well, that's a good start. Conceivably, you could have separate entities that are really just an amalgam. But that wasn't the case here. And FedEx has consistently over its history, FedEx Corp consistently over its history, argued to other courts just like this one and other district courts and other state courts that these subsidiaries were independent of FedEx Corp. They have been doing that time and time and time again. And the court below ignored that by saying there are many reasons that corporations incorporate. To me, that's a non sequitur, because we have to look as to why and whether these entities were operating independently in this case. Cedric Kushner involved a natural person. That was the issue, right? A natural person and a corporation, yes. It was a fight promoter. Don King, I think you're on. And you would agree that there are untold number of corporations that have got untold numbers of subsidiaries that are legally distinct or separate corporations? I think that's so. And as I understand it, part of your argument relies just on the fact of legal separation. That's enough of a predicate to advance a civil RICO violation. Well, again, those aren't my words. Those are the words of the Supreme Court and of this Court. Now, I think that since we deal with this case in a summary judgment mode where all inferences go to the non-moving party and the case is presented favoring the non-moving party, the obligation and the burden being the defendant, that in answer to Your Honor's question, what the defendant has to show is, no, that's not the case here. That these entities are not, excuse me, Your Honor, that these entities are not separate just for the sake of being separate. Well, there are two things there. But my first question to follow up on Judge Saxe's question is that Cruz follows Cedric Kushner and incorporates this idea of a single corporate consciousness. And you can quibble about what exactly that means. But it seems to suggest that that's what we should look at. And that's 2013 or 14. Well, that's true. Of course, Your Honor, that's true about Cruz and where the Court said that — actually said it the other way around, I think. I think what the Court said in Cruz was they're not separate when they're guided by a single corporate consciousness. All right. And that's a big difference. Okay. But you're saying that it isn't guided by a single corporate consciousness. Well, no. I mean, because FedEx has said as much, that it's not guided by a single corporate consciousness. They have different presidents. They have different obligations. They do different things. They operate independently, which is what FedEx says. We operate — our subsidiaries operate independently. You say this has been decided on a motion for summary judgment, not a motion to dismiss. Is that right? What, that phrase? No, no, no, no. Your case. Oh, yes, yes. This is a motion for summary judgment. Is that a question of fact? Monumentally. Yeah. Monumentally. But on summary judgment, once the evidence is in, you can make findings of a fact that's not materially disputed, right? The Court can obviously make those decisions. Okay. Is that what we're reviewing, a finding of fact on summary judgment about a single corporate — Oh, I think there is. Yeah, there has been a finding here, because if there wasn't a finding, I wouldn't have my case dismissed. Yeah, okay. So there has been a finding, and — Did the Court discuss it in any way, explain why it decided that it's a single corporate company? Obviously not to my satisfaction. No, I didn't ask that. And I think what the Court — I thought that the district court here relied — said that Cruz doesn't apply. We can agree or disagree with that. But that there is this facilitation requirement. I was going to get to that. Okay. Why don't you get to that? I think that — I think that — Go ahead. Mr. Justice, we just had an ecclesiastical case. That was — I'll use a little Latin. That was a — that was a deus ex machina for the district court. They reached out — the Court reached out, found Bucklew, a case that's never been cited in this circuit again for this purpose, for this district, for these districts, and found a creation of a principle. Facilitation. It doesn't appear anywhere else. Now, is it true that there are at least two or three other circuits that have adopted, more or less, this facilitation requirement?  Facilitation, I think, in those circuits, in those cases, means at least to me, and I would hope to the Court, that the relationships can't be obscure. It's almost as if they are in the proximate cause chain. It's not merely enough being separate for RICO purposes. Now, granted, that sort of flies in the face of Cushman. But there has to be an interrelationship sufficient so that the actions of one are driving — excuse my driving — are assisting the actions of the others in this scheme, in the RICO scheme. I think this case is perfect in that sense, that even were we to adopt and say, yes, we have a new standard here, we're going to adopt the Seventh Circuit standard in Bucklew, and we're going to say we need facilitation, it is clear that it's here. You don't make that argument in your brief, do you? Which argument is that, Your Honor? That is that even if we adopt the facilitation requirement, you prevail. Well, I think we do, Your Honor, because what happens in the brief is that we go on to discuss precisely how ground interacted in this scheme with — with FedEx Services and FedEx Corp. And I think those facts truly drive a facilitation argument, if Your Honor were to adopt that, for this circuit. Because what happens in this case is that none of this can — none of this can occur unless these three corporations work together on the scheme. I want to ask you, when you — if you have due reserve some time on rebuttal, to find for me where you make the argument that you would prevail, your client would prevail, even if we were to adopt a facilitation requirement. Very well, Your Honor. Do you want me to continue on to the — How much time did you reserve for rebuttal? I reserved three, I believe, Your Honor. I'll give you a little time on rebuttal, and why don't we hear from the other side. Okay. Because you've got two — there are two other issues? There are two others on class action waiver and on the transportation stuff. Okay. Good morning — or afternoon, Your Honors. Still the morning. Still the morning. Still the morning. Okay. Aaron Cassett here on behalf of FedEx. This Court should affirm the district court's rulings because after five years of litigation, more than 25 depositions, more than 3.1 million pages of document production, the evidence clearly shows that the three FedEx companies operate within a single corporate structure guided by a single corporate consciousness to carry out its package delivery. Your client says that actually the evidence is that there was not a single corporate consciousness, and obviously they are legally separate, and you've acknowledged that. Yes. Why don't you address that? The legal separation or the corporate consciousness? Both. Okay. Well, the corporate consciousness — the legal separation isn't disputed. That's never been disputed. As counsel points out, it's public record for that matter. It doesn't need to be put on proof. As far as the corporate consciousness, the FedEx companies, the one goal of all of the companies together is to provide a portfolio of shipping solutions for its customers. Whether that be the customer wants to transport the packages by motor carrier, they might use FedEx Ground. One of the other subsidiaries, FedEx Express, who's not a party here, is an airline customer. They may want to use FedEx Express or FedEx Freight, which Your Honors can imagine is a freight company. So all of those companies, FedEx Services, the defendant in this case, provides IT support, marketing, sales, revenue. If I want to invest in this entire enterprise, the only way, first of all, is FedEx is a publicly traded stock, isn't it? Yes, sir. The only way I can invest in any of this as an individual would be to buy FedEx stock, not anybody else's. Is that right? Yes, sir. Yes, FedEx Corp. is the holding company for all of the aforementioned subsidiaries. By definition, a holding company, it holds stock. That's basically the exception. It's not an operating company? No, sir. FedEx Corp. is a holding company that holds the stock of four subsidiaries, which I just listed, FedEx Ground, FedEx Express, FedEx Freight, and FedEx Services. Importantly, FedEx Services... Whose individual consciousness becomes the corporate consciousness? That is to say, where is that person who is he or she the president of the holding company or a group of people from each of the... Who's actually running all these companies if the parent is just a holding company? Who makes decisions for them? I beg your pardon, sir? Who makes decisions for them all? Well, the decisions are made at various levels, depending on what the decision may be. Obviously, in this particular case, there was no specific decision identified by the plaintiff, in this case, which they say, hey, that decision was made by FedEx Corp., that specific decision was made by FedEx Corporation, and it used these other subsidiaries to carry out this fraud scheme. The companies... For example, in the cases that opposing counsel cites, where FedEx had taken the position that, you know, we're different operating companies, we don't control the operations of the other subsidiary, those affidavits come from cases where employees were suing ground, for example, and also trying to sue FedEx Corporation as an employer, secondary employer. So in that context, FedEx Corporation doesn't have the hiring and firing decision-making power over FedEx ground employees or FedEx Express employees. So in that context, it's a completely different consideration than the one that's before the court. Corporate structure and single corporate consciousness may be different things in different contexts, you say? Yes, sir. Yes. I think that's absolutely the case. Otherwise, the RICO statute would just apply arbitrarily to every company that chooses to operate through the parent subsidiary structure. There are different ways to view these facts. Why isn't there a disputed issue of fact that requires us to send this back for prior effect to figure out whether there's a single corporate consciousness, assuming that that test survives Cedric Kushner? The plaintiff hasn't presented any fact that would put that in issue. Now, I don't think that there is any dispute. There is no dispute in the record that the company operates, as I just described, trying to provide its customers with different shipping solutions to meet their individual needs. That's why they offer the three different subsidiaries and then FedEx services. It's also important to note that the three ---- the plaintiff's comments that this was a separate company that was acquired by FedEx, which, as I understand it from the record, has separate management that is in Pennsylvania, separate from FedEx corporate management. How is it that the record establishes that there's no disputed issue of fact as to whether or not there's a single corporate consciousness here? I think it still goes back to the point I made a moment ago, that whether the FedEx ground was acquired back in the mid-'90s or whether it was created back in the mid-'90s, it really makes no difference for purposes of the RICO analysis. It's still ---- the fact of the matter is, now, during the relevant time period, it is a motor carrier providing package delivery services for customers. Would Judge Forrest have reached the same conclusion if she hadn't grafted in the facilitation requirement from Judge Posner's decision? Absolutely, Your Honor. I think so, but that's an important point. I don't know that, well, she articulated the test as saying facilitation is required, but that's not a new concept in this district. In other cases, I believe it was, well, certainly in Cruz, and it may have been a quotation from the Chippewa River Woods case, but the court said that it's not sufficient to have merely a corporation and its employees and agents and affiliates merely implying that there has to be something more. If that's all there is, then there has to be another step. Well, what she says, she grafted on this facilitation requirement. Yes, she did. Recognizing the problem that you're articulating, and she says actually about Cruz that it does not answer the open question that's presented in this case. I believe when the Cruz, the question, I think it was in a footnote, Your Honor, where I believe this court, you specifically, actually wrote that it said, you'll leave open the question of whether or not a corporation can operate one of its subsidiaries as a distinct RICO enterprise. And then Judge Forrest said that's precisely the situation that we have here, which is an open question. Was that wrong or right? That is, was Judge Forrest's view and your view of what the open question was, was she right that Cruz left that open? From a factual standpoint, yes, Your Honor, it was open question. However, from the analysis, whether or not a single corporate company, a holding company or two subsidiaries can be sufficiently distinct for RICO purposes is not a new question. Your Honor did address that in the Cruz case. Now, opposing counsel did not address the 13708B claim or the statutory or the class action waiver. I think he may briefly. Go ahead. Yeah, well, just because I'm limited on time here, I do want to mention that the 13708B claim was properly dismissed because the plaintiff simply does not plead a cause of action under that statute. It does not allege that FedEx presented anything to the plaintiff that misrepresented the actual rate or charges that FedEx presented. So I think the court properly dismissed that claim as well. With that, the court does not need to even get to the class action waiver because the case would be completely disposed of. However, I will point out that if the court does need to get to the class action waiver, there is no reason why the court should treat a class action waiver outside of the arbitration context any differently than it would treat the class action waiver present in the Italian colors case, which did have the arbitration provision. This situation, the clause in this case is less restrictive than the clause in the Italian color case. Here, the plaintiff maintains his right to pursue a statutory remedy in court of law without having to go through the expense and time and rigors of arbitration. And briefly, finally, I want to just, I guess, address one of the arguments the plaintiff made in his brief but did not address a moment ago is the unconscionability of the contract. This contract was entered into between two companies. The plaintiff had other options when he chose to ship with FedEx. He could have used UPS. He could have used some other carriers, DHL. There are no high-pressure sales tactics or any deceptive negotiating. So with that, Your Honor, I would ask that the court affirm all three decisions of the court below. Thank you. To answer Your Honor's questions about where we mentioned this below, of course, the Court does have the ability of de novo review here. So whether it was raised below or not, it's still available to the Court. But it was raised in the – in our main brief when we discussed rather extensively the decision below. What page? This is page 14, but we can take the seriatim. It was first mentioned at page 11 where we were talking about facilitation. We said whether viewed as a pure conclusion of law or a mixed question of law in fact, de novo review is available. And then at page 14, in the middle of the page where we were discussing the decision below and the quoted materials, what's the difference between the separate corporations and, say, looking at them as just separate divisions, and the quotas were legally because they're separate corporate entity. They're their own legal entity. They have their own management. So it's different than operating as a division, which then led into at page 19 at the bottom where we said because the court below added an additional element of facilitation to its distinctive analysis. What page? Page 19 at the bottom. You're on our last paragraph beginning. Because the court below added an additional element of facilitation to its distinct analysis and then found that there was no allegation that FedEx grounds separate incorporation facilitated the unlawful activity, it held that there was no genuine question, et cetera. So I think we've discussed it throughout the brief. And, in fact, even if we didn't discuss it, Your Honor, the court has the ability to make de novo review. I think it works the opposite way. But go ahead. Keep going with your other arguments. Okay. Moving on, once again, FedEx leads with they have a single corporate structure and a single corporate consciousness. But the fact is the only single corporate consciousness is profit. That's the single corporate consciousness. If that's what we're talking about, if that's defendant's point, that the single corporate consciousness here that defeats RICO distinctness is that the single corporate consciousness of FedEx corp, ground, and services is profit, well, that's nonsense. Because that would mean you could never bring a RICO action. Because every corporation has their single consciousness, unless they're philanthropic, which FedEx is not. So I don't think that's what's meant, and I don't think that's all that's needed. With regard to the issues that I – and remember, it's FedEx who said we operate independently and we bargain collectively, which is, again, profit. Getting to the issues, and again, this is with regard to the facilitation, if Your Honors take a look at the actual claim here, the Canadian custom scheme and the upweighting scheme and the disaggregated billing, it is very clear that there is no way this scheme to defraud could operate the way it did unless all three of these corporations facilitated one another. Corp doesn't do the billing. The billing is done by services. Services doesn't do the shipping. It doesn't do the weighing, et cetera. That's done by ground. Ground utilizes software to do that, which is developed by services. That software developed by services is done because corp wants it that way. I'm sorry, but is that the test? It facilitates unlawful activity or created to facilitate unlawful activity, not whether or not they do things together? Oh, no. I'm talking specifically about the activity because if you take the Canadian custom scheme, this scheme doesn't work unless there's something called a broker incentive, right, where the recipient is supposed to pay the duty, taxes, and fees, and then ground doesn't get it back from the broker, and it goes into a billing program, and then it's disaggregated by the billing program developed by services that does the billing so that nobody can follow it. We're talking millions of dollars. And the billbacks, which are billbacks of $15 million. And we have a services employee in this record that admits we really have been taking money from them. But I think that the question is, to the extent that there is a facilitation requirement, that's a separate question, but to the extent that there is such a requirement, wouldn't the requirement be that they, in this case, for example, brought or bought FedEx Ground for the purpose of engaging in this fraud that you've alleged? Oh, no. I don't think it's that at all, Your Honor. Okay. Or that they had these subsidiaries as separate legal entities for the purpose of engaging in this fraud? I think you can have existing corporation. I mean, for RICO purposes, you can have existing corporations doing other things of which the RICO scheme is just one. So I don't think they have to battle things. Any case that says that the corporations, whether viewed as the enterprise or viewed as the actors, the persons, as it were, have to be solely devoted to the RICO scheme. No, no. That's not what I'm saying. No, FedEx does other things other than this fraud. That's not what I'm saying. But to – well, you know what, is there anything else? Let me cut you off, Your Honor. I don't think I can. No, is there anything else? I understand your concern. What I'm saying here is they may have other things to do. But as far as this case is concerned, right, the RICO enterprise was facilitated one is to the other. And the only other reason – Let me ask one question as a – I'm sorry, a detour. Surely. Go ahead. On the Italian covers, colors, class action waiver issue, you argue that the effective indication doctrine applies. Why does it, since we don't have a conflict between two Federal statutes? Why talk about effective indication at all where we're not harmonizing two Federal statutes? Well, I think conceptually what I'm talking about, Your Honor, and maybe I was inarticulate in doing it, was that without the ability to utilize a class action here, the rule of law becomes if you steal a small amount of money, you'll never be brought to justice because nobody can afford to do that. Nobody can afford to bring you to justice. There's no overriding Federal arbitrationist act preemption doctrine going here, no matter how anybody feels about that one way or the other. The fact of the matter is that the evidence in this record shows that in order for my client to bring this action as an individual, right, to effect – effect, yes, the class action waiver, it would cost between $75,000 to $100,000 just for the expert. Just for the expert. More than the claim might be worth. And so the rule of law becomes steal a small amount of money, and even if you're caught, nobody can do anything about it, if this class action waiver is effective. And that's why it cannot be, and that's why it shouldn't be. This is not a situation of where there's an overriding principle. Something that countervails that, such as the Federal Arbitration Act. The last thing I want to talk about is – and I'll do it very briefly – is the transportation statute. This transportation statute, which Your Honors might understand comes after the era of ICC regulation. It is a product of the death of the filed rate act. It's very simple. It's unambiguous. It says on its face, if the bill or the invoice of the bill that you issue is incorrect, that's a violation. The key is truth in billing, and that makes sense based on its history. It is unambiguous. These bills were false. That's all that's needed under the statute. There is absolutely nothing else needed under the statute, and there's no reason to look behind it. How much total in terms of overcharges are we talking about? With regard to everyone, I don't know. With regard to your client? I think it was approximately – let me see if I have the figure here. I know the defendants found that on the up-weighting scheme, it was about $3.7 billion per year. That's obviously overall. For my client, I think we're looking at the defendant admitted about $7,000 and admitted. On the up-weighting scheme? That's on the custom scheme. On the up-weighting scheme, I don't think we have a separate broken-out figure, but it is astronomical. And the bill backs this to everybody. The bill backs not picking up from the recipient but getting it back from the shipper were $15 million. That's total, not your client? Total, not my client. I don't think we've broken it out specifically for my client. Well, thank you very much. Thank you, Your Honor. We'll reserve the decision.